UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DIXON JESUS RAMIREZ SALAS,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ et al.,<br>Respondents. | CASE NO. 2:26-cv-02981-JNW<br><br>ORDER GRANTING HABEAS CORPUS PETITION AND PERMANENT INJUNCTION |

## 1. INTRODUCTION

Dixon Jesus Ramirez Salas is a 34-year-old Venezuelan asylum seeker who was paroled into the United States on December 20, 2022. For nearly four years, he built a life in America where he worked as an electrician to provide for his family and had a child. On July 3, 2026, Immigration and Customs Enforcement (ICE) detained him without notice or an opportunity to be heard and later transferred him to the Northwest Immigration Customs Enforcement Processing Center ("NWIPC"). Ramirez Salas petitions for a writ of habeas corpus and a permanent injunction. Dkt. No. 1. For the reasons below, the habeas petition and request for a permanent injunction are GRANTED.

## 2. BACKGROUND

Ramirez Salas fled political persecution in Venezuela. Dkt. No. 2 ¶ 5. When he arrived in Mexico, he encountered a police officer who provided a website to apply for humanitarian parole. *Id.* On December 20, 2022, Ramirez Salas presented himself at the Dallas Fort Worth International Airport, and the Department of Homeland Security (DHS) paroled him into the United States through December 18, 2024. *Id.* ¶ 6; Dkt. No. 3 at 16; Dkt. No. 10 ¶ 3. He applied for asylum on December 22, 2023. Dkt. No. 2 ¶ 6.

After receiving work authorization and a social security number, Ramirez Salas found a job as an electrician in Texas. *Id.* ¶ 7. He financially supports his entire family, including his father, mother, two sisters and two children in Venezuela. *Id.* ¶ 8. His father suffers from kidney failure, diabetes, and hypertension and requires dialysis treatment three times a week which Ramirez Salas paid for before his detention. *Id.* ¶ 17. He also has a two-year-old daughter who is a United States citizen. *Id.* ¶ 8. In August 2025, Ramirez Salas moved to Iowa for work where he cultivated a community of friends and coworkers. *Id.* ¶¶ 9–10.

His parole expired by its terms on December 18, 2024. Dkt. No. 11-1 at 2. ICE did nothing. On March 31, 2025, DHS issued a notice stating that it had terminated the parole program for Venezuelans and that Ramirez Salas's parole would end on the earlier of his original expiration date or April 24, 2025. Dkt. No. 11-2 at 2. The notice told him he "should depart the United States now" and warned that he "may

be subject to" removal proceedings. *Id.* It said nothing about arrest or detention. *Id.* Ramirez Salas stayed, kept working, and continued to pursue his asylum claim.

On July 1, 2026, a police officer pulled over Ramirez Salas when he was driving home from dinner with a friend. Ramirez Salas had a couple of beers with dinner and forgot to turn on his headlights. Dkt. No. 2 ¶ 11. The officer booked him into jail for the night despite successfully passing a sobriety test. *Id.* ¶ 12. The following day, the judge decided to release Ramirez Salas but, before that occurred, ICE arrested him. *Id.* ¶¶ 13–14.

On July 3, 2026, Ramirez Salas was transferred to a detention center in Cedar Rapids, Iowa. Dkt. No. 10 ¶ 5. ICE told him his work authorization and asylum case were terminated. Dkt. No. 2 ¶ 14. After detaining him, ICE served Ramirez Salas with a Notice to Appear (NTA), charging him as "an alien present in the United States who has not been admitted or paroled." Dkt. No. 3 at 7. ICE eventually transferred Ramirez Salas to the NWIPC where he is currently detained. Dkt. No. 10 ¶¶ 6, 8. His removal proceedings are ongoing. *Id.* ¶ 7.

Recently, Ramirez Salas's father's medical conditions have become life threatening. Dkt. No. 2 ¶ 17. Without financial support from Ramirez Salas, his father cannot afford to continue his medical treatments. *Id.* ¶ 19.

## 3. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful

opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

In addition to habeas relief, federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42).

A plaintiff seeking a permanent injunction must demonstrate "(1) that [he] ha[s] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy

in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## 4. DISCUSSION

### 4.1 Revocation of release and re-detention must comport with due process, regardless of the detention statute that applies.

The parties dispute the statutory basis for Ramirez Salas's detention. Ramirez Salas contends he is detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing; the Government contends he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Dkt. Nos. 9 at 6; 12 at 5. The Government's premise is doubtful. The Ninth Circuit recently held that § 1225(b)(2)(A) reaches noncitizens "seeking admission" at the border or a port of entry, that § 1226(a) is the default for noncitizens present in the interior, and that "any ambiguities in § 1225(b)(2)(A) cut against, not for, the government's asserted authority." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1174–75, 1182 (9th Cir. 2026). And the Government's own charging document treats Ramirez Salas as an interior entrant, not an arriving alien. Dkt. No. 11-7 at 2, 5. The Ninth Circuit hasn't said whether § 1225(b)(2) reaches a parolee whose parole lapsed years earlier and who is re-arrested far from any port of entry. The Court need not decide that question. Regardless of which statute governs his custody, the constitutional question remains: was Ramirez Salas deprived of his liberty without due process when ICE revoked his release and re-

detained him without notice or a hearing? Courts in this District have consistently answered this question in the affirmative.[1]

The Government also argues that because Ramirez Salas was paroled and never admitted, he has only the process Congress provided by statute. Dkt. No. 9 at 8–9 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107, 138–40 (2020)). The Ninth Circuit has rejected that reading of *Thuraissigiam*, which it described as "an admission, not a detention, case." *Padilla v. U.S. Immigr. & Customs Enf't*, No. 24-2801, --- F.4th ----, 2026 WL 2822044, at *19 (9th Cir. Sept. 21, 2026). As the court explained, "[a]dmission and detention occupy fundamentally different positions in our legal order," *id.* at *16, so *Thuraissigiam* does not bar a

[1] *See, e.g.*, *Osuna Benitez v. Hermosillo*, No. 2:25-cv-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (citing *Zadvydas v. Davis*, 533 U.S. at 693); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025)) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'"); *Arrioja Blanco, et al. v. Hermosillo, et al.*, No. C26-493-MLP, 2026 WL 548056, at *2 (W.D. Wash. Feb. 27, 2026) ("Courts have held that noncitizens paroled or released from § 1225(b) custody retain a protected liberty interest in continued release and are entitled to procedural safeguards before being returned to custody, regardless of whether § 1225(b)(1) or (b)(2) applies."); *Bealter Reyes et al. v. Hermosillo et al.*, No. 2:26-cv-00270-TLF, 2026 WL 507678, at *2 (W.D. Wash. Feb. 24, 2026) ("[T]he Court need not consider whether there is a statutory basis . . . upon which petitioners may be lawfully detained . . . because even assuming a statute permits government detention of an individual, the Due Process Clause may provide procedural protections not found in the statue."); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected.").

noncitizen's due process challenge to his detention—even when he is subject to mandatory detention under § 1225(b), *id.* at *19.

### 4.2 Ramirez Salas's re-detention without notice and a pre-deprivation hearing violates procedural due process.

To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest. *Id.* This Court has previously found no reason to distinguish parole cases from similar cases in which ICE revoked orders of supervision without providing pre-deprivation notice or an opportunity to be heard. *See Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *7 (W.D. Wash. Mar. 11, 2026); *Gomez Candelo v. Noem*, No. 2:26-CV-00576-JNW, 2026 WL 879049, at *4 (W.D. Wash. Mar. 31, 2026). All three *Mathews* factors favor Ramirez Salas.

First, his private interest is perhaps at its height, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Ramirez Salas lived in the community for almost four years and pursued asylum. He built a full life in Iowa where he found work and made a group of friends. He has a two-year-old daughter who is a United States citizen. His removal proceedings are ongoing. Ramirez Salas's liberty interest exists even when release is conditional and must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases); *see also*

*Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *7 (W.D. Wash. Feb. 13, 2026) ("A petitioner's liberty interest [does] not expire along with his parole.") (citation modified); *Morales v. Hernandez*, No. 2:26-CV-01686-DGE, 2026 WL 1753643, at *4 (W.D. Wash. June 18, 2026) ("Courts in this district have consistently concluded that an individual . . . who has been released on parole under § 1182(d)(5)(A) and has lived with relative freedom in the United States for a number of years, has a protected interest in not being detained.").

The Government contends that Ramirez Salas's interest is lessened because he is "an arriving alien who was released under humanitarian parole," so he has "the same liberty interest as a person who had been stopped at the border." Dkt. No. 9 at 7 (citing *Ndiaye v. Blanche*, No. 2:26-cv-02145-TMC, 2026 WL 2468275, at *2 (W.D. Wash. Aug. 21, 2026); *Pantoja Sanchez v. Hernandez*, No. 2:26-cv-00884-TMC, 2026 WL 1506130, at *3 (W.D. Wash. May 29, 2026)). Neither case cited by the Government carries that weight. Both petitioners were pro se. *Ndiaye* denied relief "[b]ased on the arguments raised in the habeas petition," 2026 WL 2468275, at *2, and *Pantoja Sanchez* decided whether the petitioner was statutorily eligible for bond, not whether due process permits re-detention without a hearing, 2026 WL 1506130, at *2–3. Neither confronted the distinction between admission and detention discussed above. The Court remains persuaded by the many decisions holding that the statute under which a noncitizen is detained does not override his constitutional due process rights. *Morales*, 2026 WL 1753643, at *4 ("Courts in this district have consistently concluded that an individual such as Petitioner who has been released on parole under § 1182(d)(5)(A) and has lived with relative freedom in

the United States for a number of years, has a protected interest in not being detained."); *Ramirez Tesara*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause."); *see also supra* at 5 n.1.

Second, the risk of erroneous deprivation and value of additional procedures are high. The Government argues that the risk of error is "minimal" because ICE followed the proper regulatory procedure and gave Ramirez Salas written notice twice: in March 2025, when DHS told him his parole was ending, and again when it served the NTA. Dkt. No. 9 at 7–8. The March 2025 letter told Ramirez Salas to depart and warned that he might face removal proceedings, but it said nothing about arrest or detention, and it came 15 months before ICE acted. Dkt. No. 11-2 at 2. A letter announcing that parole has ended is not notice that a person will be jailed, and it "does not somehow obviate the need for the Government to provide a[n] individualized hearing prior to re-detaining the parolee." *Ramirez Tesara*, 800 F. Supp. 3d at 1136; *see also Shinwari v. Hermosillo*, No. 2:26-cv-00009-RAJ, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026). The NTA was notice of removal charges handed to a man already in custody. Notice given to someone already in custody is not notice before the deprivation.

Regardless, the Government's argument does not account for the due process owed to Ramirez Salas beyond specific regulatory procedures. Removal proceedings decide whether Ramirez Salas may remain in the country, not whether he should be detained, and they occurred after his arrest. The record contains no determination

by any official that he posed a danger or a flight risk, and the one neutral decisionmaker who did consider his custody—the Iowa judge who saw him the morning before ICE took him—found that conditions of release were enough. Dkt. No. 11-3 at 4–5. A hearing would have let Ramirez Salas present his three and a half years in the United States, his pending asylum application, his work history, and his family ties to someone with authority to weigh them. Disputes like these "should be resolved at a pre-deprivation hearing, rather than resolved after the fact by this Court." *Ramirez Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *5 (W.D. Wash. Nov. 25, 2025).

Third, the Government's interest in re-detaining Ramirez Salas without a hearing is low. Nothing prevented ICE from scheduling a hearing before or after it became aware of his arrest. *See E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). And the Government's interest in preventing noncitizens from remaining in the United States without authorization, Dkt. No. 9 at 9, "is not implicated here, where [Ramirez Salas's] *detention* is at issue—not [his] removal from the United States." *Espinoza Palacios*, 2026 WL 686138, at *8.

All *Mathews* factors favor Ramirez Salas and support finding that his detention violates procedural due process. *Aslan v. Wamsley*, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). It is undisputed that Ramirez Salas did not receive a hearing before his re-detention. A "post-deprivation hearing cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an

erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Accordingly, his detention violates procedural due process, and he must be released.

Courts in this District and elsewhere have consistently reached the same conclusion. *See, e.g.*, *Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), *report and recommendation adopted*, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Ramirez Tesara*, 2025 WL 3288295, at *1, *6 (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1201–03 (W.D. Wash. 2025) (revocation of an OREC requires notice and a pre-deprivation hearing); *Nguyen v. Bondi*, No. 2:25-CV-02723-RAJ, 2026 WL 183819, at *4 (W.D. Wash. Jan. 23, 2026) (revocation of an OSUP requires notice and a pre-deprivation hearing); *Tzafir v. Bondi*, No. 25-CV-02067-JHC-SKV, 2026 WL 74088, at *3–5 (W.D. Wash. Jan. 9, 2026) ("The Government's redetention of Petitioner with insufficient notice and no opportunity to be heard violates the due process protections afforded to her by the Constitution."). This case presents nothing that would warrant a different result.

**4.3 The Government must follow the law if it re-detains Ramirez Salas.**

Having found due process violations, the Court further finds that issuing the requested injunctive relief is appropriate. Each of the four *eBay* factors supports this conclusion. *See eBay,* 547 U.S. at 391.

Ramirez Salas suffered irreparable harm through the violation of his constitutional right to due process and over three months of unlawful detention. He has been separated from his two-year-old daughter for that entire time and unable to pay for the treatment his father needs to survive his kidney failure, causing Ramirez Salas and his family significant hardship. Dkt. No. 2 ¶¶ 17–19. Since Ramirez Salas's detention, his father's condition has become life threatening; he was recently hospitalized and has lost almost 20 pounds since he stopped receiving treatment when ICE re-detained Ramirez Salas. *Id.* No monetary remedy can compensate for the deprivation of physical liberty. The balance of hardships favors Ramirez Salas, as the injunction requires only that the Government comply with the Constitution before re-detaining him. And the public interest is served by an order prohibiting the Government from violating the Due Process Clause and ignoring the many cases that have found re-detention without notice or an opportunity to be heard is unlawful.

Ramirez Salas has also established a "cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has already detained him without process, despite nearly four years of contributing to his community and

pursuing lawful status. This raises concerns that, absent injunctive relief, he may be subject to the same due process violation again. Moreover, for months, courts in this district have repeatedly found that the Government's conduct in revoking release and re-detaining noncitizens without pre-deprivation process is unconstitutional. The Government has chosen to "respectfully disagree" with those orders and to continue its current practices. Thus, the Court finds the Government has expressed "an avowed intention to continue the challenged conduct." *Espinoza Palacios*, 2026 WL 686138, at *10 (citation modified).

Accordingly, the Court prohibits Ramirez Salas's re-detention unless the Government first provides written notice of the basis for the proposed re-detention and an Immigration Court hearing is held to determine whether detention is appropriate.

### 4.4 The Government must prove by clear and convincing evidence that re-detention is warranted.

Ramirez Salas also asks that at any future pre-detention hearing, the Government bear the burden of proof by clear and convincing evidence. Dkt. No. 1 at 12, 18.

The Court agrees with Ramirez Salas that a heightened evidentiary standard is appropriate here. The Government released him and then left him in the community for nearly four years. It is the Government that now seeks to reverse course and reimpose confinement. *See Espinoza Palacios*, 2026 WL 686138, at *10–11; *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025).

Numerous courts have adopted this procedural requirement to protect noncitizens' due process rights. *See, e.g., Espinoza*, 2025 WL 2581185, at *14; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034–36 (N.D. Cal. 2025); *Singh v. Noem, et al.*, No. 2:26-cv-00403-GJL, 2026 WL 555397, at *3 (W.D. Wash. Feb. 27, 2026); *Subham v. Noem*, No. C26-292-SKV, 2026 WL 497101, at *5 (W.D. Wash. Feb. 23, 2026); *Martinez Hernandez*, 2025 WL 2495767, at *13. And ultimately, "[s]ince it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Espinoza*, 2025 WL 2581185, at *14.

For these reasons, the Government must meet the clear and convincing evidentiary standard at any future pre-detention hearing for Ramirez Salas. Similarly, because Ramirez Salas was previously managed under less restrictive conditions of release, the Government must demonstrate that those alternatives to detention are no longer adequate before reimposing the most restrictive option. *See Luis Barraza Laguna et al. v. Julio Hernandez et al.*, No. 2:26-CV-00864-GJL, 2026 WL 2516736, at *2 (W.D. Wash. Aug. 14, 2026).

## 5. CONCLUSION

Accordingly, the Court orders as follows.

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. The Government must RELEASE Ramirez Salas within TWENTY-FOUR (24) hours of this order, subject to the conditions of his most recent parole agreement.

3. Within FORTY-EIGHT (48) hours of this order, the Government must provide the Court with a status report confirming that Ramirez Salas has been released from custody and informing the Court of the date and time of his release.
4. The Government is permanently ENJOINED from re-detaining Ramirez Salas during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where it must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks.
5. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 2nd day of October, 2026.

Jamal N. Whitehead
United States District Judge